· · [L. A. No. 1249.   Department One.—August 5, 1904.]

SOUTHERN PACIFIC COMPANY, and SOUTHERN PA-CIFIC RAILROAD COMPANY, Appellants, v. CITY OF POMONA et al., Respondents.

RAILROAD CORPORATIONS—POWER TO DEDICATE LAND FOR HIGHWAY.—Railroad corporations have the power, if not forbidden by their charters, to dedicate land for a public highway which has been conveyed to them for railroad purposes.

ID.—DEDICATED STREET—UNLAWFUL USER—PREVENTION BY CITY—RAILROAD COMPANY NOT DAMAGED.—A railroad company which has dedicated its land for a public street has thereafter no right to cause a railroad track and warehouses to be built thereon in such a way as to obliterate the street and to take possession thereof to the exclusion of the public; and it is not damaged by being prevented from such unlawful action by the city authorities.

ID.—PROOF OF DEDICATION—USER OF HIGHWAY BY PUBLIC—STATUTORY PERIOD.—Under a statute providing that "all roads shall be conceded as public highways which have been used as such for five years or which may hereafter be used for five years by the public as a highway," the use of railroad land by the public as a highway and the

repair thereof by the public authorities for that period of time constitute a dedication thereof to the public use, and the right of the public to continue to use the land as a road is thus fixed and established.

ID.—VALIDITY OF STATUTES—CONSTRUCTION.—The statutes of December 25, 1877, and March 30, 1878, in relation to highways in Los Angeles County, are not invalid, as embracing more than one subject therein. It is immaterial whether the latter statute operated as a repeal of the former where a dedication was established under the latter. Neither of the statutes can be construed merely as fixing the period of user, and not as defining the character of the user necessary to establish a dedication.

ID.—EXTENT OF USER.—Where the evidence tends to show the user of the street to the width found by the court, the fact that the main travel was confined to narrower limits is not conclusive of the width.

ID.—DEDICATION BY AGENTS.—A grant formally made by the directors of a railroad corporation is not essential to constitute a dedication of land for a public highway; but agents who were in the employ of the railroad company at a city in which a street was dedicated by their consent on behalf of the railroad company bound the company by their action, where their authority to do so was ostensible, and was not questioned or denied by the railroad company, which presumably had knowledge of their notorious action and conduct of its affairs.

ID.—DEDICATION BY LESSEE COMPANY — OSTENSIBLE AUTHORITY FROM LESSOR.—Where the land which was the subject of dedication as a street was deeded for railroad purposes to a railroad company lessor, and was clearly within the control and management of a railroad company lessee, and for the purposes of the lease could be dealt with by the lessee as the necessity or interest of the business required, and the public authorities and the general public had reason to believe that the lessee company had full authority to dedicate the street, and there is evidence that such belief was intentionally engendered by the lessor company, the lessee company had ostensible authority to bind the lessor company by its dedication.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion.

Bicknell, Gibson & Trask, for Appellants.

Robert G. Loucks, and Gibbon, Thomas & Halstead, for Respondents.

CHIPMAN, C.—Plaintiffs bring this action to enjoin defendants from interfering with plaintiffs in the construction of a track partly laid along the south side of First Street in the city of Pomona, part of a tract of land claimed to be owned by the Southern Pacific Railroad Company (hereafter referred to as S. P. R. R. Co.), and leased to plaintiff, Southern Pacific Company (referred to hereafter as S. P. Co.), praying also that their title be quieted, and for damages. The tract of land of which said First Street is a part, is a parallelogram containing twenty acres, including the right of way, and is four hundred feet wide north and south and twenty-two hundred feet long east and west, through which the main track of plaintiffs' road runs, its center being one hundred and fifty feet from the south boundary and two hundred and fifty feet from the north boundary of said tract. The city of Pomona is situated on all sides of this tract. First Street is situated along the south side and Bertie Street along the north side of said tract. Garey Avenue, Elizabeth (or Main), Gordon, and Ellen streets cross the tract north and south, all of which streets are claimed by defendants to be public highways dedicated as such by plaintiffs and accepted by defendants and the public. On April 13, 1901, the S. P. Co. commenced to lay a track along the south side of First Street, the south rail of which would be five feet ten inches from the south line of the tract and street, along which are blocks of land improved by buildings erected from time to time facing this tract. The company proposed to erect warehouses along the north side of the track it had begun to build, thus entirely obstructing First Street. Defendants interfered by such force only as was necessary and compelled plaintiffs to desist from laying this track. Hence the action.

In their answer defendants set up title as highways to all said streets and prayed that the title be quieted to them as public highways. The court found the facts in favor of defendants and gave judgment accordingly. Plaintiffs appeal from the judgment and from the order denying motion for a new trial.

1. In reply to one of appellants' points, it may be stated at the outset that unless forbidden by their charters, railroad corporations, as well as other corporations, may dedicate the right to occupy and use as a public highway land conveyed

to the corporations for railroad purposes. (*People* v. *Eel River etc. R. R. Co.*, 98 Cal. 665; *Sussman* v. *San Luis Obispo County*, 126 Cal. 536. See, also, Elliott on Roads and Streets, sec. 146; 2 Elliott on Railroads, sec. 425; 9 Am. & Eng. Ency. of Law, p. 33.)

2. As to the point that plaintiffs should recover damages in any event, it need only be said that plaintiffs were proceeding to build a track and cause warehouses to be erected in such a way as to entirely obliterate First Street. If the street was a dedicated highway, plaintiffs were not damaged by being prevented from taking possession of it unlawfully and for an unlawful use and to the entire exclusion of the public.

3. It appears that the S. P. R. R. Co. acquired the right of way through the site of the town from one Louis Phillips in 1873, who, being owner in fee, on March 9, 1875, also conveyed by deed to the company the tract in question; the company's main track was completed in 1874, and there is evidence that the town of Pomona existed as early as that year, with streets laid out as they appear on a map of the town which was recorded August 20, 1875, and appears in the record. This map locates the streets in accordance with defendants' contention. The county board of supervisors attempted to establish a highway in December, 1875, and did lay out and record as a public highway a road which included as a part of it the strip of land in question known as First Street.

The company was not notified of this action and was not compensated for its land thus included. The road, however, was improved and worked by the county and treated as a highway by the public from that time forward, as were all the other streets except Gordon Street, which latter street, for the moment, may be left out of view. There is much evidence showing that these streets, except Gordon Street, were graded, worked, and cared for at the expense of the county and generally used by the public without objection or interference by the company. This began in 1875 and continued down to the time when Pomona became a city of the fifth class in 1888, and the streets were thereafter worked and cared for by the city. We will not undertake to set forth this evidence. There was, however, an attempt made by the company to occupy a portion of First Street in 1876, as to which the evi-

dence may be briefly stated.   One O'Connor was section fore-
man of the company at Pomona from 1876 to 1884 or 1885.
He testified that he had orders to build a fence around the
section-house, running south to the boundary-line of the tract
in question, thus inclosing a strip seventy-five feet in length
of First Street; that he commenced the work, when he was
waited upon by a committee of citizens who objected; that he
wrote to the resident engineer, Mr. Lambie, or to Mr. Hewitt,
the division superintendent, for instruction; that Mr. Lambie
came personally the next day, and was told that the citizens
objected to putting the fence on the public road.   ''He said,
'Mr. O'Connor, we did not know that there was a street here.'
I said, 'Well, the citizens claim there is.'   I was referring to
First Street.   Mr. Lambie says: 'Mr. O'Connor, put that
fence back forty feet from the line north.'   I said, 'Well, Mr.
Lambie, they claim a seventy-foot street.' .He says, 'Well, I
guess for the present, with the travel that is over it now, forty
feet will be plenty.' ''   O'Connor moved the fence back as
directed, and it has remained there ever since, and the court
found the width of First Street at this point to be forty feet.
O'Connor testified to putting crossings in 1876 on Geary
Avenue and on Elizabeth Street by Mr. Hewitt's orders, and
that these streets were traveled at that time; that First Street
was worked in 1876 by the county roadmaster along the tract
in question, both before and after he put up the fence, and
that the road was traveled generally and looked like a worn
track and continued to be traveled.   There was another por-
tion of this street found by the court to be sixty feet wide,
the balance being seventy feet wide.   This was because a park
had been laid off on the company's land in the improvement
of which the city and the S. P. Co. became interested and this
park was inclosed and beautified and encroached upon the
streets to the extent found by the court.   We do not under-
stand that this feature of the findings is objected to.

The court found that the S. P. R. R. Co., prior to February
28, 1883, dedicated the strips of land constituting the streets
above named, except Gordon Street.   This dedication is
claimed by defendants to be valid and binding on several
grounds, but one of which need be noticed, namely, that it
became so by virtue of the act of December 25, 1877, entitled
''An act relative to highways in Los Angeles County.''

(Stats. 1877-1878, p. 6.)   Section 2 of the act declares: "All roads shall be conceded as public highways which have been used as such for five years, or which may hereafter be used for five years by the public as highways."   A similar act similarly entitled was passed at the same session of the legislature, March 30, 1878, (Stats. 1877-1878, p. 716,) which appellants claim repealed the former act.   Whether or not this be so, they were similar in their provisions, so far as concerns the five year user, and one or other of the acts was in force more than five years prior to the repeal by the act of February 28, 1883, amending the Political Code (Stats. 1883, p. 6), which took effect sixty days after its passage.   (Pol. Code, sec. 323.)

As to these statutes appellants make several contentions. First, that they are invalid because they embrace more than one subject expressed in their title; citing section 24 of article IV of the old constitution.   It is claimed that many provisions are general in their terms, including provisions with which plaintiffs are concerned, and in no way limited to Los Angeles County.   What these general provisions are is not pointed out, and we fail to discover any such.   Both acts relate only to roads, alleys, streets, and bridges in the county, and not elsewhere.   Second, that the act of 1878 repealed the act of 1877.   We have shown that if this be conceded it is immaterial.   Third, that the statute referred to should be construed merely as fixing the period, not as defining the character of the use necessary to establish a dedication and do not dispense with the requirement that use alone, to create a right in the public, must be adverse; and this in analogy to the construc-tion given section 1007 of the Civil Code, in *Thomas* v. *England*, 71 Cal. 456.   In the case cited the right was expressly claimed as secured by adverse user, and the question of fact related to such user under the statute.   The cases presently to be cited make no such distinction as is urged by appellants, and the statute does not, in our opinion, admit of the construction contended for.   Fourth, that the streets in question were used merely as convenient approaches to the railroad tracks and grounds, and by sufferance of the company.   The evidence does not bear out this assumption.   Fifth, that the extent of the use would limit the amount of the land acquired, and that the use alone marks the width of the streets claimed to have

been dedicated. We think the evidence sufficient to show the width of the streets as used by the public and as found by the court. The fact that the principal travel, as shown by the well-worn track of vehicles, appears to have been less in width than is claimed for the road, is by no means conclusive of such width. Few roads are well worn to their entire width, and much travel may occur along the sides of the beaten track without leaving a permanent impress. There is evidence tending to show use of the streets to the width found by the court, although the main travel was confined to narrower limits.

Similar statutes to the ones now before us have had consideration by this court, and it has been held that the use of land as a road by the public as a highway for the statutory period constitutes a dedication of the land as a highway, and the right of the public to continue to use the land as a road is thus fixed and established. The cases bearing upon the subject are: *Bolger* v. *Foss,* 65 Cal. 250; *Hope* v. *Barrett,* 78 Cal. 9; *Gloster* v. *Wade,* 78 Cal. 407; *McRose* v. *Bottyer,* 81 Cal. 122; *Freshour* v. *Hihn,* 99 Cal. 443; *People* v. *County of Marin,* 103 Cal. 223. (See, also, what is said in *Schwerdtle* v. *County of Placer,* 108 Cal. 589, at p. 593.) There is nothing in *Huffman* v. *Hall,* 102 Cal. 26, contrary to the doctrine laid down in *Bolger* v. *Foss,* 65 Cal. 250, and other cases cited. We think the finding and conclusion of law as to the streets above referred to are supported by the evidence.

4. The findings as to Gordon Street rest upon dedication by plaintiffs in 1896 as found by the court. The S. P. Co. leased the S. P. R. R. Co.'s property and went into possession on February 5, 1885, at which time the streets, other than Gordon Street, were being used by the public under their dedication prior to 1883. The S. P. Co. must have known the relation these streets bore to the property leased and the use being made of them, and must be held to have taken the lease subject to this dedication. The facts as to Gordon Street are briefly as follows: In 1884 there was a large brick warehouse on the street in question, resting partly on the company's right of way and partly outside of it, on the north side of the main tract between Ellen Street and Gordon Street. The building extended across this latter street, completely obstructing passage over it. The question of opening this street "had been

agitated for years," as testified by witness Gerber, who had control of the warehouse as lessee of one Phillips. Gerber testified: "Finally Mr. Muir said to me if we would satisfy Mr. Phillips for his building they would give us the street." Witness raised the money to pay the cost of removal and the damage to the owner, and then went to Mr. Muir for leave to go ahead with the work of removal. Mr. Muir "said that matter would be all right. 'You will get that street, just wait a little. This is a club we want to use to get down White Avenue.'" At that time the S. P. R. R. Co. had an application before the board of trustees for a franchise to build a branch upon White Avenue. This franchise was granted November 11, 1895, to Mr. Muir, and by him assigned to the S. P. Co. Witness testified: "Afterwards, in the summer of 1896, we took off seventy-three feet of the warehouse in order to open the street. The building extended entirely across what is now Gordon Street and three feet north. Gordon Street was then opened. I did n't see Mr. Muir any more about it; it was not necessary. Since that time it has been traveled as a public street. . . . After Gordon Street was opened the Southern Pacific Railroad or the Southern Pacific Company fixed the crossings and the track by putting in planks and some gravel. The crossing extended about entirely across the street. Gordon Street is used as much as any street, I think, between the north and the south. About the same time that the portion of the warehouse was moved, the western side of the fence that fenced in the section-house was set back to the edge of Gordon Street by the section hands of the Southern Pacific Company. Gordon Street has since been graded by the city. There is one of the regular forms of danger signs or crossing signs maintained at the crossing of Gordon Street. It was put there soon after the street was opened." In 1899 Mr. Muir wrote to the city clerk as to certain other matters, and as to Gordon Street said: "As regards the opening of Gordon Street, that matter was settled some time ago, when it was proposed to the board of trustees that if they would make the proper arrangements with the parties owning buildings on our right of way, our company would make no serious objections to the opening of the street." Mr. Muir testified: "Since 1886 the station at Pomona has been under my jurisdiction, as superintendent of the Southern Pacific Company,

which is operating this track through Pomona. . . . I occasionally act as agent of the Southern Pacific Railroad Company."

There is much record evidence showing that both plaintiffs dealt with the corporate authorities of Pomona relative to franchises and privileges involving all these streets after the city was incorporated, both before and after the opening of Gordon Street. Some of the significant facts are recited in the findings, and still others might be instanced if it were necessary. We think the evidence sufficient to sustain the findings as to Gordon Street, if the plaintiffs are bound by the acts of their agents.

Perhaps the contention most seriously urged by appellants is, that there is no evidence whatever of any authority from the principal to dedicate Gordon Street, and that the agents, so far as it appears, could not dedicate the land of their principal even if they tried to do so. It is true that no express authority was shown as emanating directly from the directors of either corporation and given to any agents, and no official action by such directors was shown. The situation is in many respects unusual, and must be dealt with in the light of all the facts and circumstances.

Appellants take the position that the S. P. Co. could not dedicate the land because that company is but the lessee of the owner, and that the S. P. R. R. Co. could not do so because the land was subject to a lease, from which it must follow that only by the joint act of the two plaintiffs could there be any dedication. To further render impregnable their position appellants claim that even under the doctrine of constructive dedication the cases go no further than to hold that a corporation can be estopped by its agents only when they act within the scope of their ostensible authority, and no officer of a corporation, as such, has authority to make or permit a dedication of the corporation's property for a street. These contentions apparently lead to the proposition that there can be no dedication of the land of a railroad corporation for a public highway except by grant formally made by the directors of such corporation. This position is not tenable. (*People v. Eel River etc. R. R. Co.*, 98 Cal. 665.) We have seen that the S. P. R. R. Co. dedicated the streets, other than Gordon Street, prior to 1883, and that both plaintiffs recognized that

dedication down to the commencement of the action. These facts show that plaintiffs sustained such relations to the municipality as to justify the presumption that they understood the situation of all these streets with reference to the tracks and the ground in question. Persons who were in the employ of plaintiffs at Pomona, or had some authority to act for plaintiffs, assumed to act for them in obtaining franchises involving the use of some, if not all, these streets, and these franchises were subsequently accepted and enjoyed by one or both of plaintiffs. The station of Pomona has grown to be of very considerable importance. The population of the city from a small number in 1875 had reached in 1885 three thousand or more when the S. P. Co.'s lease was made, and in 1896 was much increased. The unobstructed use of Gordon Street by the public was deemed by all parties to be important to the convenience of the city and plaintiffs, and was to their mutual advantage, and from 1896 to 1901, when the action was commenced, it has been, and still is, unobstructed and treated in all respects by plaintiffs' agents at Pomona as the other streets crossing the railroad company's tract have been treated. Except the warehouse and the section-house fence above referred to, no obstruction was ever placed upon the street by plaintiffs, and these were removed. Plaintiff the S. P. Co. made the usual crossings and erected the usual danger signals on Gordon Street immediately upon its being opened, and these have been maintained, and city ordinances regulating the time that trains might remain on this and other cross-streets have been observed by the S. P. Co. Plaintiffs' exhibit 4 shows Gordon Street to be an open, unobstructed street, with the Phillips warehouse moved back on the line of the street, and the Gerber warehouse also on the line. Numerous buildings, corrals, and inclosures for various railroad purposes erected on the tract at different times by plaintiffs are all located so as to leave Ellen, Gordon, and Main streets and Garey Avenue open and unobstructed. The only cross-street appropriated and used by plaintiffs is Thomas Street, which at the track is occupied by the station or depot buildings, and was so occupied from the completion of the road in 1874, and is not involved in this action.

The open, notorious, and public character of most of these facts and circumstances and their long-continued existence

would seem to establish, *prima facie* at least, and justify the
inference that the conduct of plaintiffs' affairs at Pomona by
their agents was with the knowledge, consent, and under the
authority of plaintiffs.  In the very nature of the business of
plaintiffs it would be impracticable for the board of directors
to take up matters such as are here involved in connection
with the hundreds of stations on their thousands of miles of
road.  It is but reasonable to hold that the agents of these
companies, in doing what is by this record disclosed, were act-
ing within their ostensible, if not express, authority.  And this
would seem the more to be a reasonable conclusion where, as
here, the companies made no attempt to show that the acts of
their agents were without authority-or in violation of instruc-
tions given to such agents, or was to the damage or injury of
the companies.

Appellants cite *Pacific Bridge Co.* v. *Kirkham,* 54 Cal. 558,
and *California Nav. and Imp. Co.* v. *Union Trans. Co.,* 126
Cal. 433, in support of their contention.  The question decided
in the Pacific Bridge Company case related particularly to
the insufficiency of the findings.  It was, however, said that
the president and members of the Water Front Company,
individually, but not in their corporate capacity, could not
dedicate land of the corporation by giving permission to use
it.  Where dedication is claimed to result from such consent
alone, a question arises different from that here in view of all
the facts.  In the other case cited one question was as to the
authority of a person who had charge of reclaiming and farm-
ing a portion of what is known as Roberts's Island in San
Joaquin River.  For the use of the owners (a corporation),
a wharf had been constructed, which was also part of the
reclamation levee, from which the products of the soil had
been shipped to market, the steamboats and other craft being
permitted to use it for that purpose.  Plaintiff leased the
wharf from the owners, and to prevent defendant from com-
mitting a trespass upon the property, brought injunction.
The question, among others, arose as to whether this wharf
had been dedicated to the use of the public by the owners,
which defendant sought to establish by the acts of the person
above referred to, who testified that he was engaged in carry-
ing out the reclamation work and the management of the
land.  No officer or director of the company had ever visited

the property and no action was ever taken by the corporation towards establishing a wharf there. It was held that the agent had no authority to dedicate the land to public use. The facts, it seems to us, were wholly unlike the facts here.

The full extent of the authority of the S. P. Co., as lessee and agent of the S. P. R. R. Co., we do not know, for the lease is not in evidence. The court found that it "leased the railroad, its sidings, switches, subways, tracks, turntables, and all the appliances and appurtenances thereof." The land in question was deeded for railroad purposes, and was clearly within the control and management of the S. P. Co., and for the pur-. poses of the lease could be dealt with by this company as the necessity or interest of the business required. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, sec. 2300.) Whoever seeks to charge the principal with the act of an ostensible agent must himself believe that the agent had authority as such from the alleged principal. (*Harris* v. *San Diego Flume Co.*, 87 Cal. 526.) The evidence is that the city authorities, as well as the general public, believed that the S. P. Co. had full authority to dedicate Gordon Street, and there is evidence, from which a reasonable inference may be drawn, that the S. P. R. R. Co. engendered this belief intentionally as well as by want of ordinary care. Whether Mr. Muir was acting in this particular instance as division superintendent of the S. P. Co., or was acting for the S. P. R. R. Co., or both, does not appear, but that he was with good reason believed by defendants to be acting under competent authority and held himself out as so acting, does appear. No other conclusion is consistent with the conduct of the parties interested. The dedicatory acts to which we have alluded were such as would apparently be within the power of the S. P. Co. to perform in the conduct of the business contemplated by the lease. The S. P. R. R. Co. permitted the S. P. Co. to appear to possess authority, as it had itself, to dedicate Gordon Street and is bound by its agent's acts as within its ostensible authority. (Reinhard on Agency, sec. 192.)

Having in view all the facts in the case, we do not think the plaintiff should be heard to deny the dedication of the streets

involved, and it is, therefore, advised that the judgment and order be affirmed.

Cooper, C., and Harrison, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Van Dyke, J., Angellotti, J., Shaw, J.