[Civ. No. 903.   Third Appellate District.—September 30, 1912.]

## THE PEOPLE, Respondent, v. QUONG SING and SING KEE, Appellants.

Action to Abate Nuisance—Obstruction of Highway—Sufficient Evidence of Highway.—In an action to abate a nuisance, caused by the obstruction of an alleged highway forty feet in width, it is held that there is sufficient evidence that a highway of that width was used by the public as early as the year 1863, along the strip of land in controversy, and that its use was continuous for more than five years prior to the act of 1873, which gave the public the right to use it as a highway, by limitation of time, and that such highway was never abandoned.

Id.—Conflicting Evidence as to Location of Highway—Finding and Conclusion Based on Date of Deed Unsupported.—Where there was conflicting evidence as to the precise location of the highway, and whether it included the place of alleged obstruction, and it appears that a former owner of land granted a right of way to two grantees, at the place of alleged obstruction twenty feet in width, on the fourteenth day of April, 1902, it is held that a finding and conclusion based on said date that said roadway "being forty feet in width, is now, and ever since the 14th day of April, 1902, has been, used by plaintiffs as a highway," and "as a duly dedicated highway ever since said date," and that said obstruction is a nuisance, cannot be construed as referring to any prior date, and cannot sustain the doubling of the width granted in said deed.

ID.—OPINION OF COURT NO PART OF RECORD—FINDINGS AND JUDGMENT
   NOT SUPPLIED.—The written opinion of the court printed in re-
   spondent's brief, cannot be considered as any part of the record,
   and cannot be used to supply findings and conclusions. of law and
   judgment different from that actually pronounced by the court
   as of the date of the deed in question.  The evidence other than
   that deed, and used after its date, April 14, 1902, was not of itself
   sufficient to support the findings and judgment.

APPEAL from a judgment of the Superior Court of Placer
County.   J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

Meredith & Landis, and John M. Fulweiler, for Appellants.

Chas. A. Tuttle, District Attorney, and Ben. P. Tabor, for
Respondent.

CHIPMAN, P. J.—This is an action for the abatement of a
nuisance alleged to consist of obstructions placed and now
being maintained by defendants on a public highway.   Plain-
tiff had judgment, from which defendants appeal.   The
charging part of the amended complaint reads as follows:

"1. That a certain road and highway in the town of New-
castle, county of Placer, state of California, described as com-
mencing at the northeast corner of the Rice Tract, according
to the plat of the Rice Tract now on file in the office of the
recorder of the county of Placer; running thence in a south-
easterly direction to a point opposite a house known as the
C. M. Silva house in the said town of Newcastle; said road
and highway being forty feet in width along the east line of
the said Rice Tract, is now and at all the times hereinafter
mentioned was a duly laid out public highway of the county
of Placer, state of California.

"2. That defendants, during the month of December, 1910,
built and constructed a fence and barn on said highway at a
place known as Newcastle Chinatown, and are now maintain-
ing said fence and barn on said highway at said place."

A general demurrer was overruled and defendants an-
swered, denying the existence of the alleged highway in the
following terms:

"1. Deny that a certain or any road or highway in the town of Newcastle, county of Placer, state of California, described as commencing at the northeast corner of the Rice Tract, according to the plat of said Rice Tract on file, at the time of the commencement of the foregoing entitled action, or now, in the office of the recorder of the said county of Placer, state of California, and running thence in a southeasterly direction to a point opposite a house known as the C. M. Silva house in said town of Newcastle, is now, or was at the time of the commencement of the foregoing entitled action, or was at any of the times referred to in said amended complaint, a duly, or otherwise, or at all, laid out public, or otherwise, highway, either of the said county of Placer, state of California, or otherwise, or at all; deny that said alleged road or highway is, or was at the time of the commencement of the foregoing entitled action, or was at any of the times mentioned in said amended complaint, of the width of forty feet, or any number of feet, or any width whatever."

Defendants also deny that they or either of them constructed the fence or barn as alleged in the complaint "or at any other place or point"; deny that said fence and barn obstruct said alleged highway and deny maintaining said or any obstruction.

The court made the following findings:

"1. That a certain road and highway in the town of Newcastle, county of Placer, state of California, described as commencing at the northeast corner of the Rice Tract according to the plat of the Rice Tract now on file in the office of the recorder of the county of Placer, and running thence in a southeasterly direction along the east line of the Rice Tract to Cypress Street, said road and highway being forty feet in width, is now, and ever since the 14th day of April, 1902, has been, used by plaintiff as a highway.

"2. That defendants, during the year 1910, built and constructed a fence and barn on the road and highway hereinbefore described in finding 1, and are now maintaining said fence and barn on said road and highway.

"3. That the said fence and barn, built, constructed and maintained on said road and highway by defendants, are an obstruction on said road and highway and interfere with the

free and comfortable use and enjoyment of said road and highway by plaintiff.''

As conclusions of law the court found:

''That the said road and highway described herein in finding 1, is now and ever since the 14th day of April, 1902, has been, a duly dedicated highway of the county of Placer.

''2. That the fence and barn built and constructed by defendants on said highway constitute a nuisance.''

There is a separate appeal from the order denying motion for a new trial, No. 857, which, by stipulation, is to be heard with the appeal from the judgment.

The finding is that said parcel of land ''is now, and ever since the 14th day of April, 1902, has been, used by plaintiff as a highway.'' The judgment employs the terms, used in the conclusion of law, that said parcel of land is ''now and ever since the 14th day of April, 1902, has been, a duly dedicated public highway.'' The averment of the complaint is that said strip of land ''is now and at all the times hereinafter mentioned was a duly laid out public highway.''

Defendants state in their brief that there is but one question to be determined—namely: ''Is the strip of land described in the complaint a public highway or a private right of way?''

The record is voluminous, comprising the testimony of many witnesses and, as to the existence and location of the highway, is sharply conflicting. Without confining themselves to the issues presented by the pleadings, both sides submitted evidence, without objection, as to the existence of a public road along the land described in the complaint, when it was first used as such, how it was used by the public and became a public way, and tracing the title to the land from the general government to the present owners. There was evidence tending to show that a roadway was used by the public along the strip of land in controversy, leading to and from the town of Newcastle, as early as in the year 1863 and that this use had been continuous. The proceedings of the board of supervisors of Placer County were introduced which showed that, in May, 1872, a roadway therein described was recognized as then in use as a highway and it was shown that this roadway was substantially along the strip of land in question. This declaration of the board of supervisors was made

under the act of February 24, 1872 (Stats. 1871-72, p. 142), which provided that all public roads and trails in Placer County "located in accordance with the provisions of this act are hereby declared public highways." Section 6 of the act provided that the board should, in the month of May, 1872, "inspect the records of the roadmasters and, by order entered in the Record Book of Roads, shall determine and declare what roads and trails heretofore used as public highways shall be highways, which order shall distinctly state the beginning, general course and 'terminus of such roads and trails, and that, from thenceforth that such roads and trails shall be declared and dedicated as public highways." The act of March 30, 1874 (Stats. 1873-74, p. 833), declared that all public roads in the county of Placer located and established "in accordance with the present road law, and recorded in the Record Book of Roads and Highways of said county or which may hereafter be so located, are hereby declared public highways." In 1872 the title to this land was in the United States and passed to the Central Pacific R. R. Co. in 1875 by patent. In 1866, prior to the date of the grant to the railroad company, Congress granted the right of way over public lands for roads, highways, ditches, etc. (U. S. Rev. Stats., sec. 2477 [Comp. Stats. 1901, p. 1567, 6 Fed. Stats. Ann. 498]) ; and the supreme court has held that proof of user by the public for the statutory period, under the act of 1873, constitutes the dedication of the land as a highway. (*Southern Pacific R. R. Co.* v. *City of Pomona,* 144 Cal. 339, 345, [77 Pac. 939], and cases there cited.)

There was no evidence that this road was ever abandoned as a highway. Section 2619 of the Political Code, in effect January 1, 1873, provided that— "Roads laid out and recorded as highways by order of the board of supervisors, and all roads used as such for a period of five years are highways." There was evidence that the parcel of land involved was used as a highway for more than five years prior to 1873. This act was repealed in 1874 (Stats. 1873-74, p. 116) but it has been held that the act of 1873 was "in the nature of a statute of limitations, which gives to the public the right to use the road as a highway in case it has been so used." (*Bolger* v. *Foss,* 65 Cal. 250, [3 Pac. 871], and cases noted in *Southern Pacific R. R. Co.* v. *City of Pomona,* 144 Cal. 339, [77 Pac. 929].) There was

evidence tending to show that, in 1879, one Haight, the then owner, conveyed to Quong Yet Lung certain land lying mostly north of this strip but embracing a portion of it at its northerly end and south of the railroad right of way; also certain land to Quong Sing lying along the north boundary of this strip. Haight conveyed to Quong Sing a strip of land containing one-twentieth of an acre which occupies a part of said road southerly from the land of Quong Yet Lung to Cypress Street. The deed contains the following clause: "Conditioned that said strip of twenty feet shall be dedicated to and exclusively used for road purposes, for the benefit of property east of same, deeded to Quong Sing, and on the north deeded to Quong Yet Lung."

It was by right of this deed, as we gather from the evidence, that the obstructions complained of were placed in the highway. The fence was erected along the highway but did not connect with any other fence and performed no office except to prevent the occupants of the land on the west side of the road from reaching it.

There was evidence that this roadway was traveled from the year 1863 without its being interfered with until the Central Pacific Railroad crossed it with trestle work under which the highway was traveled; that, about 1876, an earth fill was substituted for this trestle work thus shutting off the travel by that road past Chinatown but travel to the inhabitants of Chinatown continued over this road to the railroad embankment without interference until obstructed as now complained of. As to the width actually traveled witnesses varied in their testimony but there was evidence that, after Chinatown was established, the buildings on the east of the road were treated as the eastern boundary and the buildings and building and inclosures on the west as the western boundary. There was evidence that the traveled track was not confined to the center of this strip but was sometimes on one side and sometimes on the other as well as at points in the middle, but that the width of the space thus passed over was at least forty feet. It was held, in *Southern Pacific R. R. Co.* v. *The City of Pomona,* 144 Cal. 339, [77 Pac. 929], that, where the evidence tends to show the user of a street to the width found by the court, the fact that the main travel was confined to narrower limits is not conclusive of the width. The record of the proceedings

of the board of supervisors of 1872 does not mention the width of the road then declared to be a highway but it is fair to assume that the board contemplated a width at least equal to that in use. That there was a roadway used by the public continuously from about the year 1863 over this strip of land is abundantly shown by the testimony and upon this point there is no serious conflict. The conflicting testimony was chiefly as to its precise location. We think, however, there was sufficient evidence that the location was substantially as claimed in the complaint and shown in the findings. We think, too, that, regardless of any claim of a highway by virtue of the proceedings of the board of supervisors in 1872 and regardless of any view that may be taken of the reservation in the Haight deed of April 14, 1902, there was sufficient evidence to show, by user for ten years prior to 1873, that the land in question became a highway by virtue of the act of 1873.

In this condition of the record we are asked for a reversal of the judgment and order for the reason that finding 1 is not responsive to the issue presented by the pleadings, and this because the complaint alleges that this strip of land was *"duly laid out"* as a highway while the finding is that it *"has been used"* as a highway since April 14, 1902, and the conclusion of law was, as is also the judgment, that the land, "ever since the 14th day of April, 1902, has been *a duly dedicated highway."* (Italics as used by appellants.) The argument runs thus: The complaint avers that this strip of land was "duly laid out" and it cannot be said that a finding that it "has been used" as a highway is in any sense responsive to the issue and there is no finding that the strip was "duly laid out" as a highway. Furthermore, it is contended that a finding that a strip of land "has been used as a highway" cannot sustain a conclusion of law and judgment that said strip of land is and has been "a duly dedicated public highway"; that the judgment decrees more than is asked in the complaint and the finding of a user is in excess of the averment of the complaint. These points are followed up by authorities showing the distinction in law between these various forms of expression and that they are not legal equivalents. Had these points been raised in the course of the trial and the court had been asked to limit the evidence strictly to

the averments of the complaint, a different question would be before us had the rulings been such as to raise it. But both sides invited the greatest latitude and evidence, without objection, was addressed to the laying out or establishing of the road, to its user and to its dedication. We think the court was justified in dealing with the case as counsel dealt with it and was not confined strictly to the paper-made issues, for counsel seem not to have observed them. The question both sides were seeking to solve was the question as appellants stated it in their opening brief—Is the strip of land in controversy a public highway or a private right of way? The question as to how it became the one or the other, if either, was opened up and free hand given for its exploitation. It may safely be assumed that terms used by the learned trial judge were not used in their strictest legal sense and that in the sense intended the "dedication" adjudged might arise from the user shown and found. Proof of user under the act, of 1873 for the statutory period was said, in the Pomona case, to constitute a dedication.

The question of more difficulty arises out of the finding and conclusion of law that the said road "is now and ever since the fourteenth day of April, 1902, has been, used by plaintiffs as a highway" (finding) "a duly dedicated highway" (conclusion of law and judgment). It is contended that the "findings and conclusions of the court show an election on the part of the court to stand upon the deed from Haight to the defendants hereinbefore set forth, and to eliminate from consideration entirely the testimony addressed to the period anterior to February 14, 1902." It is further contended that even if this deed may be construed to constitute a dedication of the strip of land to the public, the court erred in doubling the width so dedicated. The court rendered a written opinion which is appended to respondent's brief. This, however, forms no part of the record and cannot be used to supply findings or to support either findings or judgment. This opinion shows that the court had in view all the evidence as well as the condition in the Haight deed in reaching its conclusion that a highway "is now and ever since the 14th day of April, 1902, has been used by plaintiffs as a highway." It is our duty to give the findings and conclusions of law a construction in support of the judgment if it can rea-

sonably be done without violating the plain import of the language used. We find ourselves unable to give the language used a reasonable construction which would justify our holding that the terms "ever since the 14th day of April, 1902," meant any period prior thereto. If the court had intended to place its finding in part on proof of user or dedication prior to that date it would have been a very simple matter to accomplish it by framing a finding accordingly. The correspondence of the date with that of the Haight deed is more than a coincidence and if we were to consult the written opinion of the court it would plainly appear that the date and the earliest date at which the court fixed the existence of a highway was a date founded on the Haight deed which the court regarded as evidence of dedication to the public. But the finding is not thus supported for this deed conveyed a strip twenty feet wide, whereas the court found the strip to be forty feet wide. If a court should find that, on April 14, 1902, A was, and ever since has been, a trespasser on certain land, we do not think such a finding could be reasonably construed to mean that A was a trespasser years before that date. If an issue had been tendered by the pleadings or by the evidence, in the case supposed, of trespass at some prior date, the findings should respond to such issue. Counsel for respondents say that April 14, 1902, "was selected, not because the right to use as a highway, in the opinion of the court, dated from that day, but as a convenient date from which to reckon." The language bears out no such explanation. We have a code maxim "That a thing once proved to exist continues as long as is usual with things of that nature (Code Civ. Proc., sec. 1963, subd. 32) ; but this maxim does not work backwards. The evidence, other than the Haight deed and user after April 14, 1902, was not of itself sufficient to support the finding.

The judgment is reversed and a new trial ordered upon the evidence submitted at the former trial and such additional evidence as may be offered by either or both of the parties.

Burnett, J., and Hart, J., concurred.