[L. A. No. 7307. In Bank.—April 6, 1923.]

HELENA DeCOU, Plaintiff, v. H. G. HOWELL, as Administrator, etc., Defendant and Appellant; LOIS E. LILLIE et al., Defendants and Respondents.

[1] DEEDS — DELIVERY — FINDINGS — EVIDENCE — INTERPLEADER.—In an action of interpleader by a vendee to have determined whether payments under a contract of purchase of real property should be made to an alleged grantee of the vendor or to the administrator of the vendor's estate, the finding of the trial court that there was a valid delivery of a deed to the property in question from the vendor to said grantee, who was a niece of said vendor, was sufficiently supported, where the conveyancer, who drew the deed, testified that the vendor came to his office and said "she wanted to convey that property" to her niece "and that she wanted me to hold that deed as custodian, and at her death instructed me to deliver it to" her niece, that he told her that to make a legal delivery she should leave the deed with him unconditionally, as the lawyers put it, "without any strings to it," and that after this explanation he prepared the deed which the vendor signed and acknowledged and delivered to him, and that he placed it in his deposit box, in which place it remained until the death of the vendor, and where it was also shown that the execution and delivery of the deed was a very natural disposition of the vendor's property, and that, according to the vendor's own statements, she wanted her niece and the latter's husband to have everything she possessed.

[2] ID.—EVIDENCE—MOTION TO STRIKE OUT—FAILURE OF COURT TO RULE—ABSENCE OF ERROR.—In such action, where the conveyancer, in reply to an interrogatory as to what he said to the grantor by way of instructing her as to the method of conveying title by deed to be held in escrow, answered: "That in order to make a legal delivery she should leave it with me unconditionally, as lawyers put it, 'without any strings to it,'" and counsel moved "to strike that out unless it is understood that he [witness] said the words, 'without any strings to it,'" the failure of the trial court to rule upon the motion did not constitute error, for the reasons, first, that the witness used the words "no strings to it"

1. Efficacy of deposit of deed with third person to be delivered after grantor's death, notes, **Ann. Cas.** 1915C, 378, 385, 388.

Right of grantor to revoke deed delivered to stranger to be delivered by him to grantee after grantor's death, notes, 4 **L. R. A. (N. S.)** 816; 9 **L. R. A. (N. S.)** 317.

in the conversation with the grantor which he was then relating; second, if counsel regarded the language as uncertain he had an opportunity to clear it up on cross-examination; and, third, the word "unconditionally" and the phrase "no strings to it" were used as synonymous expressions.

[3] Iᴅ.—Evɪᴅᴇɴᴄᴇ—Coɴᴄʟᴜsɪoɴ—Moᴛɪoɴ ᴛo Sᴛʀɪᴋᴇ Oᴜᴛ—Aᴄᴄᴇᴘᴛ- ᴀɴᴄᴇ oғ Coᴜʀᴛ's Sᴜɢɢᴇsᴛɪoɴ—Wɪᴛʜᴅʀᴀᴡᴀʟ oғ Qᴜᴇsᴛɪoɴ ᴀɴᴅ Aɴsᴡᴇʀ.—In such action, the objection that the trial court failed to strike out an affirmative answer given by the conveyancer to the question as to whether or not the grantor "assented" to his instructions in a certain particular was untenable, where, admitting that the answer was a conclusion, counsel was forewarned that it would be such by the question propounded and should have objected, and, moreover, the conversation and conduct of the par- ties were given in detail at the court's suggestion, which was accepted by counsel, the latter's acceptance amounting in effect to a withdrawal of both question and answer.

[4] Iᴅ. — Fɪɴᴅɪɴɢs — Sᴜғғɪᴄɪᴇɴᴄʏ oғ. — In such action, a finding "That none of the denials set forth by the defendant . . . in the first clause of paragraph II of his answer are true" and "That none of the denials of said defendant set forth in the second clause of paragraph II of the said answer are true," is sufficiently definite and upon material issues, where paragraphs I and II of said answer contain admissions and denials respec- tively separately stated, and are brief, and there is nothing to confuse or mislead by the reference made in the finding to the respective paragraphs of said answer.

[5] Iᴅ. — Evɪᴅᴇɴᴄᴇ — Dᴇʟɪᴠᴇʀʏ — Iɴᴛᴇɴᴛ — SᴜʙsᴇQᴜᴇɴᴛ Dᴇᴄʟᴀʀᴀ- ᴛɪoɴs ᴀɴᴅ Aᴄᴛs oғ Gʀᴀɴᴛoʀ.—Subsequent declarations and acts of the grantor are admissible to show the intention of the grantor at the time the deed was made, the issue in this class of cases being whether or not the grantor delivered his deed with the intent that it should convey title; and in such cases the acts and declarations, in short, the conduct of a deceased grantor, may be given in evidence either in confirmance of delivery or in disproof thereof.

[6] Iᴅ.—Aᴘᴘᴇᴀʟ—Oᴘɪɴɪoɴ oғ Tʀɪᴀʟ Coᴜʀᴛ—Rᴇᴄoʀᴅ.—The opinion of the trial court, though printed in the transcript, is not a part of the record and cannot be considered by an appellate court as indicating what operated upon its mind in coming to a conclusion as to the ultimate facts of the case.

[7] Iᴅ.—Fɪɴᴀʟ Dᴇᴄɪsɪoɴ oғ Tʀɪᴀʟ Jᴜᴅɢᴇ—Wʜᴀᴛ Coɴsᴛɪᴛᴜᴛᴇs.—The deliberations of the trial court are conclusively merged in the judgment; the findings of fact and conclusions of law constitute the decision which is the final, deliberate expression of the court.

APPEAL from a judgment of the Superior Court of Riverside County. G. R. Freeman, Judge. Affirmed.

The facts are stated in the opinion of the court.

Manning & Thompson and O. M. Gipson for Appellant.

Adair & Winder for Respondent.

SEAWELL, J.—Plaintiff, Helena DeCou, initiated this action in the superior court of Riverside County primarily to compel conflicting claimants to interplead and litigate between themselves their several claims and rights to receive payments due and to become due from her under a contract for the purchase of a nine-acre tract of land of the value of about four thousand dollars, situate in said Riverside County, which she had made with the record owner thereof, Elizabeth E. Sitton, since deceased. The parties claiming an interest in the subject matter, all of whom are defendants, subsequently interpleaded.

The whole case depends upon a decision of the question whether or not the alleged delivery of a deed made and executed by Elizabeth E. Sitton to her niece, Lois E. Lillie, was a sufficient delivery as to have vested title in the latter.

A brief statement of the case becomes necessary to make clear the relations that the principal actors sustained to each other and the circumstances attending the execution and delivery of said deed.

On December 18, 1915, Mrs. Elizabeth E. Sitton visited the office of John P. Kuhns, a conveyancer and notary public, for the purpose of engaging him to prepare for her a deed conveying title to the property which forms the basis of this action, to her niece, Lois E. Lillie. After advising with Kuhns she executed a grant, bargain, and sale deed in favor of said niece and delivered it to Mr. Kuhns with instructions to hold it in his custody until her death, thereupon to be delivered to said niece.

On October 9, 1919, she entered into a contract with plaintiff, Helena DeCou, agreeing to convey to her at the price of four thousand dollars, payable on terms, the same property she had previously conveyed to said Lois E. Lillie. In compliance with the terms of said contract fifty dollars

was paid forthwith and the further sum of $500 was paid a short time before December 1, 1919. The contract provided for the payment of the remainder, both principal and interest, at stated periods, the details of which are not here important. At the time of the execution of the agreement of purchase and sale plaintiff, Helena DeCou, had no knowledge whatsoever of the execution or existence of the deed dated December 18, 1915, and delivered into the custody of Kuhns.

On February 15, 1920, said Elizabeth E. Sitton died intestate, and thereafter her brother, H. G. Howell, was appointed administrator of her estate.

To settle the conflicting claims made by H. G. Howell, as administrator of said estate, that all future payments arising out of or accruing upon said contract of sale and purchase should be paid to him as such administrator, and the asserted counterclaim of Lois E. Lillie that all of said payments belonged to her as the grantee of said Elizabeth E. Sitton by deed dated December 18, 1915, and for the reason that plaintiff was ignorant of and uncertain as to the rights of said respective parties, she brought this action to have determined by a decree of court which one of said defendants was entitled to receive the payments due and to become due under said agreement of sale.

The trial court decreed that the deed was valid in all respects and invested Lois E. Lillie with title and that the only interest left thereafter in Elizabeth E. Sitton was a life estate.

Appellant makes the claim here, as he did in the court below, that there was no delivery of the deed and that the transaction was but an attempted testamentary disposition of property, which did not divest Mrs. Sitton of title. In this particular it is urged that the court's findings are not supported by the evidence. Other objections of minor importance will be noticed latterly.

[1] We have read the record attentively and cannot agree with appellant's claim that the evidence fails to support the findings. If the testimony of John D. Kuhns, the conveyancer who prepared the deed and assisted in its execution, was believed by the court, as it undoubtedly was, inasmuch as it was the only testimony offered in the case that bore immediately and directly on the questions of execution and

delivery, and was undoubtedly indicative of the wish and intention of Mrs. Sitton as shown by language and conduct during the moments of execution and delivery, his testimony alone would be amply sufficient to sustain the court's finding on this important issue.

Mr. Kuhns, whose business was that of a conveyancer, notary public, real estate and insurance agent, had known Mrs. Sitton for a period of thirty-five years and had transacted business for her at intervals during their long acquaintanceship. His credibility is not attacked and his testimony seems to be free from criticism. In brief, he testified that Mrs. Sitton came to his office on December 18, 1915, without previous appointment, to advise with him about the legal method of conveying the property described in the deed to Mrs. Lillie. She said "she wanted to convey that property to Mrs. Lois E. Lillie and that she wanted me to hold that deed as custodian, and at her death instructed me to deliver it to Mrs. Lois E. Lillie." The witness further stated that Mrs. Sitton said nothing about having the right to repossess the deed because the witness had advised with her and told her what he understood the law to be in that respect. Mr. Kuhns further told her that to make a legal delivery she should leave the deed with him unconditionally, as the lawyers put it, "without any strings to it." After explaining to her that there must be an unconditional delivery of the deed, Mr. Kuhns prepared the deed and Mrs. Sitton signed and acknowledged it and delivered it to the witness and he placed it in his deposit box, which was kept at the Consolidated Bank at Elsinore, where it remained until after the death of Mrs. Sitton. It is very apparent from the questions propounded and the answers given as they appear from the record that Mrs. Sitton was fully informed as to the effect of a delivery such as she made, and that it was her purpose and desire to invest her niece with title and retain for herself a life estate. The deed was subsequently delivered by Kuhns to Mrs. Lillie. Neither Kuhns nor Mrs. Sitton ever spoke about the deed thereafter. Mrs. Lillie was never informed by either Kuhns or her aunt that the latter had made a deed in her favor. A week after the death of Mrs. Sitton Mrs. Lillie obtained the deed from Kuhns. She and her husband had been told by Mrs. Sitton some years prior to her death that should "anything hap-

pen'' to her at any time she would find papers with Mr.
Kuhns. She had often told her niece and said to others
that everything she had was to go to her and her husband.
It was because of the directions given to Mrs. Lillie by her
aunt that she inquired of Kuhns if her aunt had left with
him any papers or documents.

We find nothing in the testimony of Kuhns which would
lead us to question the purpose of Mrs. Sitton. In fact, the
execution and delivery of the deed was a very natural disposi-
tion of her property. Mrs. Lillie had lived with her aunt
when a child for a number of years. The marriage ceremony
with her husband was celebrated at the home of her aunt.
After marriage and for sixteen or seventeen years imme-
diately preceding the death of Mrs. Sitton she lived in a
house of two rooms constructed at her cost, but which was
built on the property of the niece and husband and stood
near to the door of their house. Mrs. Sitton during this long
period of time took her meals with her niece and the latter's
husband. There is no evidence that a disagreement ever
occurred between them. Mutual love, respect, and a tender
consideration for the comfort of each seemed to have been
the rule of the household. F. C. Lillie was extremely kind
to his wife's aunt; she reposed full confidence in his integ-
rity and judgment and advised with him freely. In fact,
Mrs. Sitton made him her attorney in fact with full and
absolute power to manage and dispose by sale of the prop-
erty in question. It is true that later Mrs. Sitton made a
contract with plaintiff by which she agreed to convey to her
the same property described in said deed. Kuhns, who then
held the Lillie deed in his deposit box, drew the contract.
Lillie, the adviser of Mrs. Sitton, was present. He, of
course, had no knowledge that a deed conveying the prop-
erty to his wife had been previously made or he doubtless
would have mentioned the fact to her that she was bargain-
ing away property deeded to his wife. Kuhns says that the
matter did not occur to him during the negotiations. It is
also true that Mrs. Sitton had shortly before this trans-
action listed her property with a real estate agent for sale.

At the time of this transaction she was pressing her sixty-
sixth anniversary. Whether the attempt to dispose of her
property subsequent to the delivery of the deed of 1915 is

to be accounted for on the theory of lapse of memory or whether it was the result of importunity on the part of others, or whether she concluded that she needed the proceeds to meet her necessities, fancied or real, or, finally, whether she regretted the step she had taken in 1915 and sought to evade the effect of it, are questions which we are not required to determine. This much is true, however, that shortly after she had entered into the contract to dispose of her property to Helena DeCou she made reference to it by stating that she intended to assign the contract to her niece.

Witnesses were produced by the respective parties to prove statements made by Mrs. Sitton in affirmance and also in disaffirmance of her intent at the time she executed said deed. Also her conduct and treatment of the property subsequent to the execution of said deed is shown. This class of testimony is not persuasive as against the testimony of the character given by witness Kuhns. Mrs. Sitton's intention was clearly indicated at the very time of the transaction, and whatever she may have done or said thereafter does not carry sufficient strength to overturn her evident desire and purpose as expressed on December 18, 1915. That she paid the taxes on the property subsequent to the delivery of said deed, spoke of it as her property, improved it, and stated that her niece would come into everything she should leave upon her death cannot separately or collectively prevail against the statements and acts heretofore referred to. It would be but natural for a person under the circumstances related to make reference to property standing of record in his or her name in a sense of proprietorship. Expressions suggestive of testamentary intention, when disassociated from the central purpose, are also to be expected. Doubtless she treated and used her property as she would have had she been the absolute owner. The evidence in the case, independent of the witness Kuhns, is quite convincing that it was the wish and intention of Mrs. Sitton that her niece should come into the possession of all the property upon her death. In fact, she approved the plan of disposing of property by deed in a conversation had with Mrs. Anida Perry, a neighbor, in 1918, in which conversation the most satisfactory method of disposing of property in view

of death was the particular subject of discussion. In this connection Mrs. Sitton said she wanted Mr. and Mrs. Lillie "to have" everything she possessed. Mrs. Zora Dell Teeters, a niece of Mrs. Sitton by marriage, testified that Mrs. Sitton in the fall of 1919, in speaking to her of Mr. and Mrs. Lillie, said: "We certainly are repaid for all we do in this life. No son could ever be more devoted to a mother than Clare has been to me. . . . Lois has repaid me for everything I have done for her in love and affection. No mother could have children who would love her more than Lois and Clare." To the same effect is the testimony of Mrs. Clare H. Lowman.

Upon the bare record as it comes to us we are satisfied that the validity of the deed in question has been established by the evidence. The trial court, however, occupied a superior advantage over us in this respect and even if the case appeared upon the record to be a close one from an evidentiary viewpoint, we would be constrained under the well-established rule to uphold its finding if there was any substantial evidence tending to sustain it.

While it is a fact to be regarded that H. G. Howell, the administrator, was a brother of Mrs. Sitton, it is also true that he shared to some extent in his sister's bounty, as his unpaid promissory notes found among her papers show.

[2] Complaint is made that the court failed to strike out a part of an answer made by witness Kuhns in reply to an interrogatory as to what he said to Mrs. Sitton by way of instructing her as to the method of conveying title by deed to be held in escrow. The answer was: "That in order to make a legal delivery she should leave it with me unconditionally, as lawyers put it, 'without any strings to it.'" Mr. Manning: "We move to strike that out unless it is understood that he [witness] said the words, 'without any strings to it.'" No action was taken by the court. There are three answers to appellant's objection. First, it appears that the witness used the words "no strings to it" in the conversation with Mrs. Sitton which he was then relating; second, if counsel regarded the language as uncertain he had an opportunity to clear it up on cross-examination; third, the word "unconditionally" and the phrase "no strings to it" were used as synonymous expressions. No

objection was made or could have been made to the use of the word "unconditionally." Surely, no harm was done by a failure to strike out a few words and permit the equivalent to remain. [3] Objection is also made to a failure of the court to strike out an affirmative answer given by Kuhns to the question as to whether or not Mrs. Sitton "assented" to his instructions in a certain particular. Admitting that the answer was a conclusion counsel was forewarned that it would be such by the question propounded. Both were in the following form: "Q. Did she assent to that? A. She did." Appellant should have objected to the question. Moreover, the testimony sets out in detail the conversation and conduct of the parties and no possible injury was done defendant by the questions and answers complained of. The court immediately interceded and instructed the witness to describe what was done and state what was said. The court's suggestion was accepted by Mrs. Lillie's attorney, which in effect was a withdrawal of both question and answer.

[4] Objection is also made to finding No. 2 on the ground that it is indefinite and is not a specific finding upon a material issue. The first complaint is directed to the following language:

"2. That none of the denials set forth by the defendant, H. G. Howell, in the first clause of paragraph II of his answer are true."

"That none of the denials of said defendant set forth in the second clause of paragraph II of the said answer are true."

Paragraphs I and II of said answer contain admissions and denials respectively separately stated. The paragraphs are brief and there is nothing to confuse or mislead by the reference made in the findings to the respective paragraphs of said answer. We experience no difficulty whatever in ascertaining what was intended and surely the matter contained in appellant's pleading should be as clear to him as it is to us. The case of *Krug* v. *F. A. Lux Brewing Co.*, 129 Cal. 322 [61 Pac. 1125], presents a situation entirely different from the one before us. The answer in that case contained both *denials and affirmative allegations* and a general finding that *all of the allegations of the answer* so

far as they are inconsistent with the allegations of the complaint are true could not support a judgment for the plaintiff. In *Johnson* v. *Squires,* 53 Cal. 37, an indefinite, general finding was made and the court properly held it to be too indefinite and insufficient to support a judgment. In the case at bar the findings are made definite by specific reference to the pleadings. They are upon material issues and are not misleading.

Appellant Howell, administrator, caused to be inserted in the clerk's transcript a copy of the opinion of the trial court giving its reasons for its conclusion. The purpose of incorporating the opinion is to show by its language that it disregarded material evidence offered by appellant to prove certain statements, declarations, and acts made and done by the grantor subsequent to the execution of the deed which are claimed to be inconsistent with the contention that Mrs. Sitton divested or intended to divest herself of title. Appellant was permitted to offer evidence to show that Mrs. Sitton exercised acts of ownership over her property and referred to it as her ranch, received the income therefrom, paid taxes thereon, and entered into a contract to convey it. This testimony was not stricken out and constitutes a part of the record. The court in its opinion misstated the law as shown by the following observations: "The law of this state seems to be settled by our supreme court decisions that only such evidence as will confirm the title in the grantee is proper for consideration; that declarations against such title so conveyed of the grantor are not admissible in evidence for the purpose of showing a different intent." **[5]** The law is clearly settled that subsequent declarations and acts of the grantor are admissible to show the intention of the grantor at the time the deed was made. The issue in this class of cases is whether or not the grantor delivered his deed with the intent that it should convey title. In such cases the acts and declarations, in short, the conduct of a deceased grantor, may be given in evidence either in confirmance of delivery or in disproof thereof. (*Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]; *Donahue* v. *Sweeney,* 171 Cal. 388 [153 Pac. 708]; *Moore* v. *Trott,* 162 Cal. 268 [122 Pac. 462]; *Tweedale* v. *Barnett,* 172 Cal. 271 [156 Pac. 483]; *Rice* v. *Carey,*

170 Cal. 748 [151 Pac. 135].) **[6]** The law is definitely settled in this state by a long line of decisions that the opinion of the trial court is not a part of the record and cannot be considered by an appellate court as indicating what operated upon its mind in coming to a conclusion as to the ultimate facts of the case. It has been directly held that the opinion, though printed in the transcript, is no part of the record on appeal and cannot be considered by the court in any manner or for any purpose. (*Estate of De Laveaga*, 165 Cal. 607 [133 Pac. 307]; *Goldner* v. *Spencer*, 163 Cal. 317 [125 Pac. 347]; *Estate of Kendrick*, 130 Cal. 360 [62 Pac. 605]; *Wilson* v. *Wilson*, 64 Cal. 92 [27 Pac. 861]; *People* v. *Quong Sing*, 20 Cal. App. 26 [127 Pac. 1052]; *Bouchard* v. *Abrahamsen*, 4 Cal. App. 430 [88 Pac. 383]; *Spencer* v. *McCament*, 7 Cal. App. 84 [93 Pac. 682].) **[7]** The deliberations of the court are conclusively merged in the judgment. The findings of fact and conclusions of law constitute the decision which is the final, deliberate expression of the court. To hold that oral or written opinions or expressions of judges of trial courts may be resorted to to overturn judgments would be to open the door to mischievous and vexatious practices. Neither a juror nor a judge is permitted to impeach his verdict or judgment.

We have, however, given full consideration to the evidence which appellant insists was disregarded or minimized in the opinion of the court and we are satisfied after giving such evidence full consideration that the conclusion reached by the court below is sustained by the evidence.

The order and judgment appealed from are affirmed.

Lennon, J., Wilbur, C. J., Lawlor, J., Kerrigan, J., Myers, J., and Waste, J., concurred.