[Civ. No. 8979. Third Dist. Mar. 8, 1957.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a National Banking Association, Plaintiff, v. RENEE K. ARAKELIAN et al., Appellants; CALIFORNIA HOME FOR THE AGED, INC. (a Corporation), Respondent.

Stark & Champlin, Stanley E. Sparrowe and John Wells for Appellants.

Mason A. Bailey for Respondent.

SCHOTTKY, J.—Plaintiff above named commenced an action by complaint in interpleader against Renee K. Arakelian, also known as Mrs. K. Arakelian, Oliver Lyons, Armenian-American Citizens Club, a corporation, and California Home for the Aged, Inc., a corporation. It alleged that the bank had on deposit at its Madera Branch the sum of $46,706.87, and at its Fresno Branch the sum of $21,550.03; that defendants claimed interests and that the bank claimed no interest in the accounts and was willing to pay the sums into court.

Defendants Armenian-American Citizens Club and California Home for the Aged, Inc., filed an answer alleging that K. Arakelian, deceased, made a completed gift of each of said deposits to the Armenian-American Citizens Club as a chapel fund for the California Home for the Aged, Inc., and that said funds are the property of the California Home for the Aged, Inc., for its use in constructing a chapel upon its premises.

Defendant California Home for the Aged, Inc., also cross-complained against defendants Renee K. Arakelian and Oliver Lyons, alleging that the deposits were gifts by K. Arakelian to California Home for the Aged, Inc., as a fund to be used for the construction of a chapel upon its premises; that the only interest of Armenian-American Citizens Club had been as trustee of the deposits for the California Home for the Aged, Inc.; and that it had previously assigned all its right, title and interest to the California Home for the Aged, Inc.

The answer of defendants Renee K. Arakelian and Oliver Lyons alleged that the deposits were gifts in trust for designated charitable purposes made by Mrs. Renee Arakelian and her husband, K. Arakelian; that Mrs. Arakelian and the other signatories on the bank accounts were trustees of said funds; and that cross-defendants had been at all times willing to perform their duties under said trust and to use the funds to construct said chapel in accordance therewith.

There being no opposition to plaintiff bank's request to pay the money into court, the trial court entered judgment that the bank "be discharged from all liability to any and all

defendants in this action with respect to said accounts, subject to the payment of said funds, less plaintiff's costs incurred herein, to the party or parties to whom payment may be directed by this Court;" and proceeded to try the controversy between the remaining parties.

Following a trial before the court without a jury the court found:

"That on January 19, 1950, K. Arakelian, now deceased, signed and delivered to A. Ted Ashjian, Treasurer for the California Home for the Aged, Inc., a corporation, a bank check for the sum of $20,000.00 made payable to the Armenian-American Citizens Club, Chapel Fund. That said check was on the 20th day of January, 1950, deposited in a savings account No. 6326 in the Fulton-Merced Branch of the Bank of America at Fresno, California, in an account entitled 'Armenian-American Citizens Club, Home for the Aged, Chapel Fund.'

"That on the 12th day of December, 1950, K. Arakelian, now deceased, made a bank check in the sum of $44,000.00 payable to the Armenian-American Citizens Club, Chapel Fund for Home for the Armenian Aged, and on the 15th day of December, 1950, caused said check to be deposited in the Bank of America, Madera Branch, in a savings account No. 6025 and entitled 'Armenian-American Citizens Club, Chapel Fund for Home for Armenian Aged.'

"That no part of either of said deposits have been withdrawn and that the respective deposits in the sum of $20,000.00 and $44,000.00, together with the accumulated interest thereon, are now on deposit in the same banks and in the same accounts.

"That both of said checks were made and deposited, and both of said deposits were made and completed with the express knowledge and consent of the cross-defendant, Mrs. K. Arakelian, also known as Renee K. Arakelian, and not otherwise."

The court found further:

"That the Armenian-American Citizens Club, a corporation, first received the funds represented by both bank deposits, for the use and benefit of the California Home for the Aged, Inc., a corporation, and thereafter assigned and transferred all its right, title and interest in said deposits to the California Home for the Aged, Inc., a corporation, for the purpose of building a Chapel upon the real property of the

California Home for the Aged, Inc., a corporation, situated at and in the County of Fresno, State of California."

"That both of the bank deposits and all of the funds which are the subject of this action were unconditional and completed gifts made by K. Arakelian in his lifetime, to and for the sole benefit of the California Home for the Aged, Inc., for the express purpose of the erection of a Chapel on the real property of the California Home for the Aged, Inc., a corporation, at and in the County of Fresno, California, and not otherwise."

Judgment was entered in accordance with said findings, it being decreed, among other things, that both deposits were gifts by K. Arakelian "for the express purpose of enabling the board of directors of the California Home for the Aged, Inc., a charitable corporation, to construct a Chapel upon the real property of said Home for the Aged at Fresno, California; that said funds were subsequently transferred by the Armenian-American Citizens Club, a corporation, to the California Home for the Aged, a corporation, for the express purpose of the construction of said Chapel upon the real property of the California Home for the Aged, at Fresno, California, and that all of said funds, together with all interest accumulations thereto, are the sole and exclusive property of the California Home for the Aged, Inc., a corporation, and are subject to the sole, unconditional, and exclusive right of the Directors of said California Home for the Aged, Inc., as to the use, expenditure, control and management of the same."

Defendants Renee K. Arakelian and Oliver Lyons have appealed from the judgment and outline their principal contentions as follows:

"I. The uncontradicted evidence is that title to the funds in question was not transferred outright and unconditionally to California Home for the Aged, Inc., but was held by the donors in trust for certain charitable purposes.

"II. Regardless of whether title was held by the donors or passed directly to the Home, the judgment that the funds are held unconditionally and without restriction is in error.

"III. The trial court committed prejudicial error in excluding important, relevant evidence."

Before discussing these contentions we shall summarize briefly the evidence, bearing in mind the familiar rule that all conflicts in the evidence must be resolved in favor of respondent.

On December 9, 1949, Mr. Arakelian caused to be made, and later signed, a check for $20,000 payable to Armenian-American Citizens Club for Chapel Fund, Trust Account. This check was delivered to Ted Ashjian, an officer of the Citizens Club, who, together with Paul Paul, also an officer, took the check and opened an account in the Bank of America at Fresno, California, entitled "Armenian-American Citizens Club Home for the Aged, Chapel Fund." Paul Paul, Ted Ashjian, and Mrs. Arakelian each signed the signature card by the terms of which all three signatures were required for withdrawal. Mrs. Arakelian testified that she received the passbook that same day, but Ted Ashjian testified that he kept it until Mrs. Arakelian requested it several months later, and that he then turned it over to her. He further testified that he had her sign the signature card because at that time her name was on a commercial account belonging to the club and he thought that as she was the wife of K. Arakelian it would be an act of courtesy to add her name thereto.

On December 2, 1950, K. Arakelian directed his secretary, Lydia Mardiguian, to make a check payable to Armenian-American Citizens Club, Chapel Fund, for Home of Armenian Aged, in the sum of $44,000, which he signed in her presence. On about December 10, 1950, Mrs. Arakelian telephoned Ted Ashjian. She told him that she had some chapel money and requested him to meet her at the Bank of America in Madera the next morning. There Mr. Ashjian asked her how much money she had for the chapel and she replied that she was not going to say anything at all and that she was not going to give it to him until she knew what she was going to get out of it. She refused to divulge any further information, so Mr. Ashjian returned to Fresno. Later he was informed that she had a check for $44,000. Mrs. Arakelian testified that thereafter she and her husband made the deposit in the name of Armenian-American Citizens Club, Chapel Fund for Home for Armenian Aged. On December 16, 1950, Mrs. Arakelian signed a deposit card which reads in part:

"We do hereby certify that at a meeting regularly called and held on Dec. 16 1950 Messrs K. Arakelian Mrs. K. Arakelian Oliver V. Lyons, whose signatures appear on the reverse side hereof, were duly elected or appointed . . . (Trustees or Officers) of the Armenian-American Citizens Club Chapel Fund for Home for Armenian Aged and that . . . they are jointly authorized to withdraw money from, and to issue checks against, any funds that said organization may

have on deposit with said bank, and to endorse and deliver to said bank, on behalf and for credit of this organization, all checks and other instructions payable to it; this authority to continue in force until notice in writing to the contrary, signed by the proper officers of this organization, is filed with . . . the bank. . . .

"Witness our hands and the seal of said Club this 16th day of December, 1950.

"Mrs. K. Arakelian Oliver V. Lyons
 (Title) Director (Title) Director"

During the trial Mrs. Arakelian admitted that she was never a director or officer of the club; that her son, Oliver Lyons, was not a member of the club and that her husband, K. Arakelian, was not a director of the club.

Mrs. Arakelian testified that she and her husband had a joint bank account which was transferred to his account and that thereafter all charity accounts were written from his personal account.

The preliminary ground plans for the erection of the home and the chapel had the approval of K. Arakelian and showed the chapel as a separate unit.

On December 16, 1950, Mrs. Arakelian was appointed by the directors of the home to head the chapel committee. There is some testimony of Mrs. Arakelian and Charles Izmirian that Mrs. Arakelian made certain requests of the directors of the home that she and her committee be given full authority to plan and build a chapel on the ground in memory of her father and the Armenian martyrs. Appellants presented this evidence by introducing the minutes of the board of directors of the home, but there is nothing said therein about a dedication or inscription, and it is evident that the directors would not give her the full authority she requested. All they did was to appoint a chapel committee with power to investigate, prepare and submit plans for the construction of a chapel. There is no evidence that K. Arakelian ever appeared before the board making any separate request. It would appear that K. Arakelian was satisfied, because, as was testified by Mr. Kardashian, Mr. Arakelian told him, "This organization is controlled by a majority."

Mrs. Arakelian insisted on building the chapel her way, on a location of her choice, and on February 19, 1953, by a telegram sent to Paul Paul, proposed that the home sell to her 3 acres of land upon which she would build the chapel.

In this telegram she did not mention any dedication to her father. This request was refused by the directors.

At a meeting of the directors of the home held in September, 1953, Mrs. Arakelian was requested to carry on with the chapel plans. She replied, "Unless I buy that three acres, unless you want to sell that three acres of land to me so that I may build that the way I want, I will not do anything." She was then removed as the head of the chapel committee but was allowed to remain as a member thereof.

Soon thereafter she informed Lydia Mardiguian that if the directors would not go along with her, she would withdraw the money and use it as she wanted and that she might give it to the Armenian Tashnag, which is an Armenian revolutionary organization. Mrs. Arakelian then advised the depositories that the funds must not be withdrawn without her consent.

There was considerable evidence regarding the preparation and approval of the plans for the chapel. Two sets were introduced in evidence. The "short set" was put in evidence by the respondent, and the "long set" was put in evidence by the appellants. The respondent approved the short set on March 22, 1953. In June, 1953, the architect prepared other plans (the long set) which were never approved by the directors. The long set shows on sheet 9, above the main entrance, as follows: "In Memory of Reverend Vartan Arslanian and all the Armenian Martyrs of 1915." The board's copy of the short set shows that one-half of page 9 had been cut off, leaving the plans without the inscription, the sheet without a page number, and the chapel without a front door. As far as the architect knew, every page in the short set had been approved. Appellants maintain that the inscription must have been cut after the board's approval and before the trial. Respondent maintains that the inscription must have been cut before the board's approval and that therefore they did not approve such an inscription. One of the directors testified that no one made any inquiries at the meeting about any missing part of any page. Another said that no questions about the inscription came up at this meeting. Another could not testify as to whether or not the inscription was on the plans he approved; he did not know or remember. Under the rule that conflicts in the evidence are decided in the respondent's favor, it is fairly inferable that the inscription was removed from the plans before the directors approved and adopted the same.

There was testimony of numerous persons who told of statements by K. Arakelian which showed that his intention in setting up these accounts was to build a chapel in memory of Mrs. Arakelian's father. However, all the directors of the home that testified said that Mr. Arakelian never made such statement to them.

In January, 1953, Mrs. Arakelian signed an agreement with the executor of her husband's estate which provided among other things that regardless of the determination of any taxing authority as to charitable deductions, the "gift of $44,000.00 made by decedent and [Mrs. Arakelian]" would be regarded as completed in her husband's lifetime, and that none of the parties would attempt to recover any portion of it.

Appellants' first contention is that title to funds in question was not transferred outright and unconditionally to the California Home for the Aged, Inc., but was held by the donors in trust for certain charitable purposes. We think the evidence clearly supports the finding of the court that the funds in controversy were "unconditional and completed gifts made by K. Arakelian in his lifetime, to and for the sole benefit of the California Home for the Aged, Inc., for the express purpose of the erection of a Chapel on the real property of the California Home for the Aged, Inc., a corporation, at and in the County of Fresno, California, and not otherwise."

Not only is the intent of K. Arakelian to make a completed gift evidenced by the form and contents of the checks and the bank accounts he set up during his lifetime, but it is also evidenced in writing in his personal income tax returns which were signed by Mrs. Arakelian and in which deductions for both of these contributions were made. There is also the hereinbefore mentioned agreement signed by Mrs. Arakelian which refers to the gift of $44,000 as completed in the lifetime of the donor.

Appellants contend also that "judgment that the funds are held unconditionally and without restriction is in error." However, as clearly appears from the hereinbefore quoted portions of the findings and judgment, the judgment does not so provide but can properly be construed only as decreeing that said funds must be used by respondent California Home for the Aged, Inc., "for the express purpose of the erection of a Chapel on the real property of the California Home for the Aged, Inc."

There is no dispute between the parties as to whether or not the money should be used for the construction of a chapel, but the basic controversy appears to be as to who shall determine what type of chapel shall be built. Appellants summarize this controversy in their opening brief as follows:

"Mrs. Arakelian claims that certain terms and conditions were attached to the use of the funds, and particularly that the chapel was to be in memory of her father, a priest of the Armenian Church who suffered a martyr's death during Mrs. Arakelian's childhood. The majority of the directors of California Home for the Aged, Inc. claim that the funds were an outright gift to the corporation, that the donors placed no restrictions on the use of the funds other than that a chapel should be built, and that the directors therefore have the right to build whatever kind of chapel they see fit. The directors propose to ignore the restrictions which appellants claim were conditions of the donation."

Notwithstanding the earnest and able arguments of appellants, we are convinced that the record as now made up supports the conclusion of the trial court that the question of control of the funds, choice of site, type of chapel, and dedication were matters which were for the board of directors of respondent California Home for the Aged, Inc., to decide. We are convinced further that it is fairly inferable from the evidence that K. Arakelian wanted the funds under the control of the directors where a majority could control, for if this were not so he could easily have given the funds directly to his wife, appellant Renee K. Arakelian. However, it is necessary to reverse the judgment appealed from because of the exclusion of evidence next discussed.

Appellants' final contention is that the court committed prejudicial and reversible error in excluding evidence as to statements or declarations of K. Arakelian after the deposits had been made. The last deposit was made on December 16, 1950, and K. Arakelian died on February 24, 1951. Appellants quote the following from the record:

"Mr. Ohanesian: Q. Mrs. Arakelian, do you know whether or not your late husband had any plans relative to the construction of a chapel?

"Mr. Bailey: I object to that question in the form in which it is made, and also it is incompetent, irrelevant, and immaterial.

"The Court: I think that objection is good, because the money has already been given, the transaction is closed. You

may not introduce oral evidence of a dead person to show something to the contrary. That is what you are endeavoring to do here, as I see it."

Appellants also complain that the court erroneously struck out certain testimony of Mrs. Sola Keoshian who testified that at a gathering in the Arakelian home Mr. Arakelian was asked: "What jewelry are you going to present as a gift to your wife?" to which he replied that everybody knew that he had a "fixed idea about the Armenian Church to build for her for the Home for the Aged."

Appellants also complain that the court erroneously struck out the following testimony of Onnig Boyajian as to a conversation with K. Arakelian: "I said, 'Mr. Arakelian, I heard you are going to build a chapel.' I said, 'Pardon me to ask when you going to build it?' He said, 'I leave it to my wife, Mrs. Arakelian, she's going to decide and do the work.'"

Both of these conversations occurred after the date of last deposit.

Appellants also complain that the court erred in excluding evidence of decedent K. Arakelian's conduct in response to statements made by Mrs. Arakelian. Mrs. Sola Keoshian testified as to a speech that K. Arakelian made at a dinner party of the Armenian-American Club in 1950, before the second deposit was made. They quote the following from the record:

"A. First of all he [K. Arakelian] mentioned about the $50,000.00 he was giving for the Old Age house, and then he said for the chapel, 'for my wife's husband'—I mean 'father, I want to dedicate a church, but the particular description I can't give anything, so I call my wife to talk about it.'

"Q. What did she say at this meeting? A. Mrs. Arakelian started her speech with the Tashnag story——

"MR. BAILEY: We object to that.

"THE COURT: Wait a minute, now, we are looking for the intent of K. Arakelian, not the intent of what this lady was. We don't want anything like that.

"MR. HAYDEN: I would like to submit that her testimony will show that he had stated that this chapel would be built as Mrs. Arakelian wanted it and that thereafter she got up and said how it was to be built, and when she was through talking everybody applauded, including Mr. Arakelian.

"THE COURT: Yeah, fine, I can't hear it. I am tied down to the man whose intent we are involved with here. I am

taking the intent of K. Arakelian, not his wife. I can't hear it."

Appellants also complain that the court committed further error in excluding Mrs. Arakelian's testimony as to her conversation with the Armenian Prelate in New York in the presence of K. Arakelian, and also in excluding evidence of Mrs. Arakelian's intention as shown by Mrs. Keoshian's testimony as to the public speech, *supra*, and as shown by the following:

"MR. OHANESIAN: Q. Mrs. Arakelian, did you consider or have plans in respect to a memorial?

"MR. BAILEY: The same objection, if the Court please, as to her plans, it would have the same consideration, it's a very vague, indefinite question——

"THE COURT: I think the objection is still good. Her plans and what she intended to do I don't think has any bearing on this question at all."

We believe that the court was in error in ruling that no declarations of K. Arakelian made after the making of the deposits were admissible in evidence. In view of the unusual manner in which the matter was handled and the fact that there was no writing setting forth the conditions attaching to the gift other than the statement on the checks that the gift was for the Chapel Fund for Home for Armenian Aged, we believe that the declarations of K. Arakelian, who was the donor, made before, contemporaneously with, and after the making of the gift, were admissible to show his intention as to the conditions attaching to the gift. The general rule is stated in *Whitlow* v. *Durst*, 20 Cal.2d 523 at page 524 [127 P.2d 530]:

"When intent is a material element of a disputed fact declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule and it is immaterial that such declarations are self-serving Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them. (*Williams* v. *Kidd*, 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703]; *Donohue* v. *Sweeney*, 171 Cal. 388 [153 P. 708]; *De Cou* v. *Howell*, 190 Cal. 741 [214 P. 444]; see McBaine, *Admissibility in California of Declarations of Physical or Mental Condition*, 19 Cal.L.Rev.

231, 251.) Likewise, in gift cases declarations made by the grantor before, contemporaneously, and subsequent to the alleged gift are admissible though the statements be self-serving. (*Sprague* v. *Walton,* 145 Cal. 228 [78 P. 645].)''

See also *Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154 [168 P.2d 946]; *O'Dea* v. *Hibernia Sav. & Loan Soc.,* 119 Cal. App. 622 [7 P.2d 318].

In the instant case one of the chief issues was whether or not K. Arakelian intended the deposit of the moneys involved as a gift for a chapel dedicated as a memorial to Mrs. Arakelian's father and the Armenian martyrs or whether the gift was for a chapel to be constructed by the directors of the Home for the Armenian Aged as determined by them. The court admitted declarations of K. Arakelian as to his intention made before the deposits, undoubtedly on the theory that they had some bearing on that issue, but held that any such declarations made after the deposits were inadmissible. The declarations K. Arakelian made after the deposits were just as admissible as to his intention in making the gift as were his declarations made before the deposits.

We have read the record carefully, and in view of the sharply conflicting nature of the testimony we believe that the exclusion of such evidence was prejudicial and requires a reversal of the judgment.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.